FRANK N. DARRAS #128904, Frank@DarrasLaw.com
SUSAN B. GRABARSKY #203004, SGrabarsky@DarrasLaw.com
PHILLIP S. BATHER #273236, PBather@DarrasLaw.com

**DarrasLaw**

3257 East Guasti Road, Suite 300
Ontario, California 91761-1227
Telephone: (909) 390-3770
Facsimile: (909) 974-2121

Attorneys for Plaintiff
DEBORAH NASLUND

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH NASLUND,<br><br>Plaintiff,<br><br>vs.<br><br>LIFE INSURANCE COMPANY OF NORTH AMERICA,<br><br>Defendant. | Case No:<br><br>COMPLAINT FOR BENEFITS UNDER AN EMPLOYEE WELFARE BENEFIT PLAN |

Plaintiff alleges as follows:

1. This Court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1337 and 29 U.S.C. § 1132(a), (e), (f), and (g), of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1101, *et seq.* (hereafter "ERISA") as it involves a claim by Plaintiff for disability benefits under an employee benefit plan regulated and governed under ERISA.  Jurisdiction is predicated under these code sections as well as 28 U.S.C. § 1331 as this action involves a federal question. The ERISA statute at 29 U.S.C. § 1133, in accordance with Regulations of the Secretary of Labor, provides a mechanism for internal appeal of benefit denials.  Those avenues of appeal have been exhausted.

2. Plaintiff is informed and believes and thereon alleges that the Zenith National Insurance Corp. Group Long Term Disability Plan (the "Plan") is an employee welfare benefit plan established and maintained by Zenith National Insurance Corp. to provide its employees and those of its subsidiaries and affiliates, including Plaintiff, DEBORAH NASLUND ("Plaintiff" and/or "MS. NASLUND"), with income protection in the event of a disability and is the Plan Administrator.

3. Plaintiff alleges upon information and belief that Defendant, LIFE INSURANCE COMPANY OF NORTH AMERICA ("LINA"), is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of the State of Pennsylvania, authorized to transact and transacting the business of insurance in this state, and, the insurer and Claims Administrator for the Plan.

4. Plaintiff further alleges that venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) in that defendant LINA, who fully insured the policy and who is ultimately liable if Plaintiff is found disabled, may be found in this district. Since on or about November 1, 1956, LINA has been registered as a corporation with the state of California, has extensive contacts within the state, employs California residents, conducts ongoing business within the state and therefore, may be found within the state.

5. At all relevant times Plaintiff was a resident of California, an employee of Zenith National Insurance Corp., its successors, affiliates and/or subsidiaries, and a participant in the Plan.

6. Based upon information and belief, Plaintiff alleges that at all relevant times herein Plaintiff was covered under group disability policy number LK-963571 that had been issued by Defendant LINA to Zenith National Insurance Corp. to insure its Plan, and the eligible participants and beneficiaries of the Plan, including Plaintiff.

7. The subject policy promised to pay Plaintiff monthly long-term disability ("LTD") benefits for a specified period of time should she become disabled. Therefore, LINA both funds and decides whether claimants will receive benefits under the Plan and as such suffers from a structural conflict which requires additional skepticism.

8. Based upon information and belief, Plaintiff alleges that, according to the terms of the Plan, if Plaintiff became disabled, LINA promised to pay long-term disability benefits as follows:

- Elimination Period: 180 days
- Gross Disability Benefit:
    - The lesser of 66.67% of an Employee's Monthly Covered Earnings rounded to the nearest dollar or the Maximum Disability Benefit.
- Maximum Disability Benefit: $15,000 per month
- Minimum Disability Benefit: The greater of $100 or 10% of an Employee's Monthly Benefit prior to any reductions for Other Income Benefits.
- Maximum Benefit Period: The Employee's SSNRA
- Definition of Disability/Disabled:
    - The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:
        - 1. unable to perform the material duties of his or her Regular Occupation; or
        - 2. unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.
    - After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:
        - 1. unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and
        - 2. unable to earn 80% or more of his or her Indexed Earnings.

9. Prior to her disability under the terms of the Plan, Plaintiff was working for Zenith National Insurance Corp. as a Medical Management Nurse.

10. On or about May 09, 2017, Plaintiff became disabled as defined by the

Plan.

11. Also on or about May 09, 2017, Plaintiff underwent a diagnostic arthroscopy of her left knee with shaving chondroplasty of the medial femoral condyle, shaving chondroplasty of the patella, and partial medial meniscectomy. Operative findings included deep lesion and instability of the posterior horn of the medial meniscus consistent with at least a partial tear.

12. Plaintiff timely filed a claim for disability benefits with Defendant.

13. On or about June 19, 2017, Plaintiff's orthopedic surgeon, Dr. Dana Verch, completed an Attending Physician Statement certifying Plaintiff's disability for grade III chondromalacia and medial femoral condyle of the left knee.

14. On or about August 03, 2017, Dr. Verch gave restrictions and limitations which included "No prolonged sitting or standing."

15. On or about October 10, 2017, Plaintiff underwent an arthroscopic examination with partial medial meniscectomy and osteochondral allograft of the medial femoral condyle of her left knee. Operative findings included additional fibrocartilage.

16. On or about March 16, 2018, Plaintiff underwent an x-ray of her left knee which showed a 2.1 cm osteochondral fragment involving the medial femoral condyle.

17. On or about March 18, 2018, Plaintiff underwent an x-ray of her left knee which showed a depression fracture in the medial femoral condyle and medial compartment joint space narrowing of the tibiofemoral articulation.

18. On or about March 23, 2018, Plaintiff's primary care physician, Dr. Zachary Taylor, drafted a letter of support certifying Plaintiff's ongoing disability.

19. On or about April 05, 2018, LINA unreasonably and unlawfully denied Plaintiff's claim.

20. On or about May 01, 2018, Plaintiff timely appealed LINA's denial.

21. On or about May 02, 2018, Plaintiff underwent an MRI of her left knee which showed progressive degeneration and partial maceration of the medial meniscus, degenerative signal abnormality in the body of the lateral meniscus, moderate grade

chondral fissuring along the median range of the patella inferiorly with moderate to high-grade chondral fissuring along the medial trochlea, edema, and joint effusion.

22. On or about June 20, 2018, Defendant LINA denied Plaintiff's appeal for Long Term Disability benefits.

23. On or about October 23, 2018, Plaintiff presented to orthopedic surgeon Dr. Robert Cameto who opined that she would likely require revision surgery on her left knee.

24. On or about January 25, 2019, Dr. Taylor completed a physician questionnaire certifying Plaintiff's disability from even a sedentary level occupation.

25. On or about February 15, 2019, Plaintiff, through counsel, requested a second appeal review of the denial of her claim.

26. On or about April 17, 2019, Defendant LINA denied Plaintiff's second appeal and advised her administrative remedies had been exhausted.

27. Based upon the substantial medical evidence in the possession of LINA at the time of the denial, the decision to deny disability insurance benefits was wrongful, unreasonable, and irrational, sorely contrary to the evidence, contrary to the terms of the Plan, and contrary to law.

28. To date, even though Plaintiff has been disabled, LINA has not paid Plaintiff any disability benefits under the Policy. The unlawful nature of LINA's denial decision is evidenced by, but not limited to, the following:

- LINA engaged in procedural violations of its statutory obligations under ERISA, including, but not limited to, failing to promptly identify the medical consultants who reviewed her file; failing to timely advise Plaintiff of what specific documentation it needed from her to perfect her claim.
- LINA ignored the obvious, combed the record, and took selective evidence out of context as a pretext to deny Plaintiff's claim.
- LINA ignored the opinions of Plaintiff's board certified treating physicians and/or misrepresented the opinions of Plaintiff's treating physicians. Deference should

be given to the treating physicians' opinions as there are no specific, legitimate reasons for rejecting the treating physicians' opinions which are based on substantial evidence in the claim file. Further, LINA's highly conflicted physicians' opinions do not serve as substantial evidence as they are not supported by evidence in the claim file nor are they consistent with the overall evidence in the claim file.

29. For all the reasons set forth above, the decision to deny disability insurance benefits was wrongful, unreasonable, irrational, sorely contrary to the evidence, contrary to the terms of the Plan, and contrary to law. Further, LINA's denial decision and actions heighten the level of skepticism with which a court views a conflicted administrator's decision under *Abatie v. Alta Health & Life Insurance Co.*, 458 F.3d 955 (9th Cir. 2006) and *Metropolitan Life Insurance Co. v. Glenn*, 128 S. Ct. 2342 (2008).

30. Additionally, ERISA imposes higher-than-marketplace quality standards on insurers. It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," *Firestone*, 489 U.S., at 113 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B).

31. As a direct and proximate result of LINA's failure to provide Plaintiff with disability benefits, Plaintiff has been deprived of said disability benefits beginning on or about November 05, 2017.

32. As a further direct and proximate result of the denial of benefits, Plaintiff has incurred attorney fees to pursue this action, and is entitled to have such fees paid by defendants pursuant to 29 U.S.C. § 1132(g)(1), ERISA § 502(g)(1).

33. A controversy now exists between the parties as to whether Plaintiff is disabled as defined in the Plan. Plaintiff seeks the declaration of this Court that she met the Plan's definition of disability and consequently is entitled to all benefits from the Plan to which she might be entitled while receiving disability benefits, with reimbursement of all expenses and premiums paid for such benefits from the beginning of her claim. In the alternative, Plaintiff seeks a remand for a determination of Plaintiff's claim consistent with the terms of the Plan.

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

1. An award of benefits in the amount not paid Plaintiff beginning on or about November 05, 2017, together with interest at the legal rate on each monthly payment from the date it became due until the date it is paid; plus all other benefits from the Plan to which she might be entitled while receiving disability benefits, with reimbursement of all expenses and premiums paid for such benefits or, in the alternative, a remand for a determination of Plaintiff's claim consistent with the terms of the Plan;

2. An order determining Plaintiff is entitled to future disability payments/benefits so long as she remains disabled as defined in the Plan;

3. For reasonable attorney fees incurred in this action; and,

4. For such other and further relief as the Court deems just and proper.

Dated: July 16, 2019



FRANK N. DARRAS
SUSAN B. GRABARSKY
PHILLIP S. BATHER
Attorney for Plaintiff
DEBORAH NASLUND